Craig SIMON, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

No. 92–CV–465–H.

United States District Court,
N.D. Oklahoma.

Nov. 22, 1995.

Order Granting in Part and Denying
in Part Motion for Reconsideration
or Certification of Question
Jan. 12, 1996.

Russell D. Carson, Richard D. Marrs, C. Clay Roberts, III, Roberts Marrs & Carson, Tulsa, OK, Chris Knight, Hill & Knight, Tulsa, OK, John M. O'Quinn, Carl D. Shaw, O'Quinn, Kerensky, McAninch & Riebschlager, Houston, TX, Tab Turner, Turner & Associates, P.A., North Little Rock, AR, for plaintiff.

Elsie Draper, Dennis Cameron, Gable & Gotwals, Tulsa, OK, Donald H. Dawson, Jr., Plunkett & Cooney, Detroit, MI, for defendant.

## ORDER

HOLMES, District Judge.

This matter comes before the Court on the Motion of Plaintiff Craig Simon to Reconsider the October 5, 1995 Ruling on Plaintiff's Motion for Default Judgment.

On November 20, 1995, the Court held a hearing on the instant motion made pursuant to Rule 37 of the Federal Rules of Civil Procedure with respect to a certain two volume index, which index was the subject of proceedings in the case of *Nora Williams v. Ford Motor Co.* (No. 81–3476–CV–S–2 Consolidated) filed in the United States District Court for the Western District of Missouri.

During the course of discovery in this case, Plaintiff requested certain documents from Defendant. Because Defendant claimed that it was not obligated to produce certain documents on the grounds that various legal privileges attached thereto, the issue of a privilege list was discussed. At a discovery hearing held on March 16, 1993 before United States Magistrate Judge Wolfe, the following exchange took place:

Mr. Cameron [lawyer representing Ford]: Okay. Judge, the one thing that I can see to bring up for now is we did get discovery requests from the plaintiff late Friday. And in looking at them, I found three things that I need to comment on currently because one of my obligations from the last phone conference was to advise you, far in advance of the thirty day time limitation, of any potential problem with responding to these discovery requests, primarily geared to the production and preparation of a privilege log.

The Court: All right.

Mr. Cameron: Privileged and confidential documents. And you will recall at the last phone conference hearing I told you that if I did get my eight categories of documents read back to me in the requests, I could promise you it would take longer than thirty days to respond. And I think you inquired of Mr. Carson and the quote was, you're not planning on asking for these eight categories of documents and the word was no.

The Court: But he did.

Mr. Cameron: Request thirty seven is produce these eight categories of documents.

The Court: Okay.

Mr. Cameron: As I explained before, we're talking about a family of documents that approaches the number of ten thousand documents and it will be a substantial project to go through the list that you've ordered us before. But I think—

The Court: I guess part of my problem is if this were the first lawsuit that you all have ever dealt with, I would have some sympathy. But since it's not and since it's not the first of this kind of lawsuit, I have some difficulty believing you haven't done this before.

Mr. Cameron: Judge, the only other time that was ordered was in the Nora Williams

case and I think in my response, the fifty one page response that I prepared, I showed you the pleadings for that was, that procedure was suspended by agreement of the parties and agreement of the court and that list was never prepared. The second thing I wanted to discuss was one of the requests and interrogatories.

The Court: Well, let me see if I can make my comment a little bit more specific. When I say you, I don't mean Mr. Cameron. I mean Ford.

Mr. Cameron: And I'm telling you, Judge, that Ford has never prepared the list that you ordered.

Clearly, Magistrate Wolfe was attempting to ascertain the amount of work and expense involved in the preparation of a privilege log. If Ford had prepared, or had even begun to prepare, such a list in an earlier litigation, then less work and expense would be involved in preparing a privilege log in the instant case. The Court concludes that, based upon a review of the facts and the context in which the question was posed, that Ford's response to the Magistrate, through its counsel, Dennis Cameron, *"that Ford has never prepared the list that you ordered"*, does not forthrightly answer the Magistrate's question.[1]

Although Magistrate Wolfe had ordered Ford to prepare a privilege list which included a category that was not contained in the index prepared in the *Williams* case, it is clear from the context of the above-described exchange between Mr. Cameron and the court that a truthful response to the Magistrate's question would have referred to the two notebooks containing the index that is the subject of the instant motion. The Court does not credit Defendant's explanation that the answer is technically correct because the addition of one category transformed Magistrate Wolfe's request into an entirely different document than the index prepared in *Williams.*[2]

The Tenth Circuit has stated that a district court should consider three factors in making findings under Rule 37:

(1) the degree of actual prejudice to the [Plaintiff] ...;

(2) the amount of interference with the judicial process ...; and (3) the culpability of the litigant.

*Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1465 (10th Cir.1988). However, the Court is unable to make a finding on the issue of actual prejudice to the Plaintiff until the index and the documents listed therein have been reviewed. Therefore, the Court orders Defendant Ford Motor Company to

1. The Court notes that Ford provided an identical formulation in its brief filed on February 26, 1993 in response to the Magistrate's discovery order. Ford stated:

The *Williams'* order, among other things, describes a list to be submitted to the court *in camera* to assist in the creation of a procedure to determine claims of privilege and work product immunity. Under the court's order in *Williams,* the list was to be submitted to the court (and only to the court) as part of an attempt to select the process for litigating the privilege and work product issues. *Williams v. Ford Motor Company*, Order at 2 (July 1, 1985) ("[T]herefore, the first order the Court will make is that the defendant furnish the Court, as a preliminary matter, a list ...").

The list described by the court in the *Williams'* order was not prepared by Ford. Instead, the parties reached an agreement and stipulation with regard to an alternative procedure for contesting the claims of privilege and work product immunity. The court consented to the party's stipulation and a separate process was adopted by order of the court. *See, Williams v. Ford*, Order, (February 18, 1986) attached as

Exhibit C. This stipulated procedure was halted by a later stay in discovery. *See, Williams v. Ford*, Order, (December 24, 1986) attached as Exhibit D.

*In short, the list requested by the court in Williams was not prepared. Nor has any list that would comply with this Court's order been prepared by Ford in any other cases in which allegations concerning Ford automatic transmission control systems have been at issue.* (emphasis added).

2. Ford also asserts that Plaintiff should be estopped from claiming that he suffered hardship as a result of not receiving a privilege log because, during the course of discovery, Plaintiff waived any right to receive such a log. While Plaintiff may have eventually abandoned his request for a privilege log in lieu of receiving other requested discovery materials more quickly, the Court finds that, Defendant inaccurately portrayed what was involved in preparing such a list by not disclosing the existence of the *Williams* index to the court. Because Plaintiff was misled by Defendant's statements, Plaintiff will not now be estopped from pursuing the instant claims.

produce to the Plaintiff all documents listed in the above-referenced two volume index no later than December 22, 1995. Counsel of record for Plaintiff shall receive the two volume index from the Office of the Court Clerk.

By February 20, 1996, Plaintiff must review the documents and make a submission to the Court which specifies the degree of actual prejudice, if any, suffered by Plaintiff resulting from Defendant's failure to disclose to Plaintiff the existence of the above-referenced two volume index. Plaintiff's submission must identify any documents that demonstrate prejudice *and* that would have been discoverable during the course of this litigation, and those documents should be attached thereto as exhibits.

Plaintiff's lawyers may not disclose or transmit any of the documents produced by Ford or the information contained in the documents to any person or entity other than Plaintiff's retained expert witness who testified at trial in this litigation, Mr. Stilson. Mr. Stilson must abide by the same restrictions. If Plaintiff's lawyers or Mr. Stilson violate this confidentiality provision, then they will be found in contempt of court and will be sanctioned accordingly. If documents are attached to the court submission, then Plaintiff shall file those documents under seal.

Finally, pursuant to Rule 37, the Court orders Ford to pay Plaintiff's reasonable attorneys' fees and costs in connection with the making of the original motion for default judgment, the motion for reconsideration, and the document review directed by this Order. By March 1, 1996, Plaintiff shall submit to the Court an accounting of the above-referenced reasonable attorneys' fees and costs.

The Court holds in abeyance any further imposition of sanctions against Ford and/or Ford's lawyers until the document review has been completed.

IT IS SO ORDERED.

### ORDER ON RECONSIDERATION

This matter comes before the Court on the Motion of Defendant Ford Motor Company ("Ford") for Reconsideration of Court's Order of November 22, 1995, or, in the Alternative, Certification under Section 1292(b) and for a Stay Pending Appellate Review (Docket # 174) and the Motion to Stay Pending Reconsideration (Docket # 176).

### I.

Plaintiff initially moved for a default judgment against Ford on September 29, 1995 based upon Ford's failure to produce during discovery two notebooks which were prepared on behalf of Ford by the Denver, Colorado law firm of Hall & Evans in 1983 (the "Hall & Evans notebooks"). The notebooks contain a list of documents. According to the record, at that time, Hall & Evans apparently believed that each of the documents listed in the notebooks could be subject to some claim of privilege.

The Court conducted a jury trial in this case beginning on October 2, 1995. During the trial, the Court heard argument on Plaintiff's motion for a default judgment. Ford responded to Plaintiff's motion by asserting that Plaintiff had essentially waived his right to request the notebooks through a series of agreements and other communications between Plaintiff and Ford during the course of discovery. After reviewing the Hall & Evans notebooks *in camera*, as well as the discovery orders in the case and the correspondence between the parties, the Court agreed with Ford's contentions and denied Plaintiff's motion.

The Court's ruling from the bench on Plaintiff's original motion for a default judgment on October 5, 1995 stated, in part:

there was no obligation on the part of the defendant to *sua sponte* submit a privilege log. That would have required further discussion and efforts on the part of the party since that general obligation was relieved and modified according to the orders of the Court and the communications between the parties. As a result, I find that there was no breach on the part of the defendant by its failure to identify or produce this document. It was within a category set out in its early submission and they are under no further obligation with

respect to any other privileged documents, to produce those or even identify those. It simply—the obligation to prepare their privilege log simply dissipated over the course of the discovery process and was never revived until a week before trial, which is not a timely revival of same.

Trial Transcript at 304–05.

On October 12, 1995, Plaintiff moved for reconsideration of the Court's denial of the earlier motion for default judgment. This motion was based upon Plaintiff's new claim that Ford had deliberately misled Magistrate Judge Wolfe with respect to the Hall & Evans notebooks. On November 20, 1995, the Court held a hearing on Plaintiff's motion for reconsideration. Thereafter, on November 22, 1995, the Court set out its initial ruling on Plaintiff's motion for reconsideration in its order of November 22, 1995 ("11/22/95 Order at [ ]"). On December 8, 1995, Ford moved for reconsideration of the 11/22/95 Order. The Court stayed the 11/22/95 Order and held a hearing on Ford's motion for reconsideration on December 15, 1995. Plaintiff responded to the issues raised at the December 15 hearing in a submission filed on December 29, 1995. This order results from Ford's motion, the subsequent hearing, and Plaintiff's response.

## II.

The Court does not view lightly either the imposition of sanctions or the taking of any action that could diminish an otherwise properly asserted claim of privilege. In particular, the Court believes that the attorney-client privilege protects the open and free communication between a lawyer and client that is fundamental to our adversarial system of justice. However, given the Court's finding that Ford made a material misrepresentation to the court about a discovery issue, pursuant to the law governing the imposition of sanctions in the Tenth Circuit and Rule 37, it is incumbent upon the Court to determine whether Plaintiff has suffered any prejudice as a result of Defendant's misconduct. The procedure crafted by this order, together with the 11/22/95 Order, balances Plaintiff's entitlement to discover, in an efficient and timely manner, the prejudice he has suffered,

if any, with the right of Ford to avoid the unrestricted dissemination of information that arguably may be subject to an applicable privilege.

The Court continues to be concerned with the effect of this procedure on the rights of both parties. To that end, the Court believes that the protective order embodied in the 11/22/95 Order and the limitation of the document review to Plaintiff's local counsel, which limitation is imposed in the instant order, accomplish the Court's goal of fairness to both parties under the circumstances. The sanctions imposed thus far by the Court are primarily designed to make the necessary determination of whether Plaintiff has been prejudiced by Ford's actions. As discussed below, this determination is required before the Court can make a final ruling on Plaintiff's motion. This order clarifies and further circumscribes the relief afforded to Plaintiff in the Court's initial order of November 22, 1995 in light of the concerns of the Court.

## III.

■ Under Rule 60(b) of the Federal Rules of Civil Procedure, the Court has discretion to grant relief from a final judgment or order. *Greenwood Explorations, Ltd. v. Merit Gas & Oil Corp.*, 837 F.2d 423, 426 (10th Cir.1988); *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir.1983). The Court may relieve a party from the provisions of an order for "any ... reason justifying relief...." Fed.R.Civ.P. 60(b). For the reasons stated below, the Court denies Ford's motion to the extent that it declines to vacate the findings contained in its order of November 22, 1995 and grants Ford's motion to the extent that it has reconsidered and modified the preliminary relief granted to Plaintiff.

In its motion to reconsider, Defendant reargues its explanation for the response given to Magistrate Wolfe at the March 16, 1993 discovery hearing. This Court directly responded to Ford's argument in its November 22, 1995 order, when it stated that:

[a]lthough Magistrate Wolfe had ordered Ford to prepare a privilege list which included a category that was not contained in the index prepared in the *Williams*

case, *it is clear from the context of the above-described exchange between Mr. Cameron and the court that a truthful response to the Magistrate's question would have referred to the two notebooks containing the index that is the subject of the instant motion. The Court does not credit Defendant's explanation that the answer is technically correct because the addition of one category transformed Magistrate Wolfe's request into an entirely different document than the index prepared in Williams.* (emphasis added) (footnote deleted).

Ford either misread or has chosen to misrepresent the Court's order in its motion to reconsider when it stated in brief that "the Court found [the representation by Ford] to be truthful, but not forthright." Brief in Support of Ford's Motion at 6; *see also* Ford's Motion for Reconsideration at 2 ("There is no legal support for any sanction of any sort under Rule 37 for a truthful statement, forthright or not.") (emphasis in original); *compare* Brief in Support of Ford's Motion at 6 ("[t]hough conceding Ford's answers were technically correct...."); *with* 11/22/95 Order at 4 ("The Court *does not credit* Defendant's explanation that the answer is technically correct....") (emphasis added). The underscored portion of the passage quoted above from the November 22, 1995 order makes clear that the Court did *not* find Ford's representation truthful, for "a truthful response would have referred to the two notebooks containing the index that is the subject of the instant motion." 11/22/95 Order at 4.

In the November 22, 1995 order, the Court further stated that "based upon a review of the facts and the context in which the ques-

tion was posed, that Ford's response to the Magistrate, through its counsel, Dennis Cameron, '*that Ford has never prepared the list that you ordered*', does not forthrightly answer the Magistrate's question." (emphasis in original). Based upon the facts and the context of the Magistrate's question, and after a review of the complete record in this case, the Court expressly finds that Ford's statement to the Magistrate on March 16, 1993 was untruthful.[1]

## IV.

The Court has discretion to impose sanctions upon a litigant who abuses the discovery process. *Orjias v. Stevenson,* 31 F.3d 995, 1005 (10th Cir.), *cert. denied sub nom. Louisiana–Pacific Corp. v. Orjias,* —— U.S. ——, 115 S.Ct. 511, 130 L.Ed.2d 418 (1994). The sanctions that the Court has imposed upon Ford for its conduct to date, which sanctions are embodied in the November 22, 1995 order and are modified herein— namely, the payment of limited attorneys' fees attributable to the making of the various discovery motions and motions for default judgment, the disclosure of certain documents to Plaintiff's counsel under a protective order, and future payment of reasonable costs and attorneys' fees attributable to Plaintiff's limited review of the documents to determine the resulting prejudice to Plaintiff, if any—are both reasonable and well within the power of the Court.

The Tenth Circuit Court of Appeals has found that, if "falsity [i]s intentionally inflicted upon the court and [it is] established in the trial record then a sanction ... derived ... from ... the court's inherent power to punish those who abuse the judicial process"

1. At the hearing on December 15, 1995, Ford filed in open court an affidavit of Mr. Cameron which states in applicable part as follows:

My first personal knowledge of the existence of the Hall & Evans' list was the result of a telephone conversation with Richard Marrs, Plaintiff's counsel, shortly before trial commenced on October 2, 1995, wherein he advised that he was filing a Rule 37 Motion for Ford's failure to disclose the existence of the Hall & Evans' list in 1993.

At the time of the preparation and submission of the February 26, 1993 brief and the March 16, 1993 hearing, I did not have any personal

knowledge of the existence of the Hall & Evans' list, or the *Nora Williams* proceedings apart from that part of the February 26, 1993 submission prepared by Kansas City counsel.

At this time, the Court declines to assess the implications of these statements, if any. The Court observes, however, that both in his brief and in his appearance before the Magistrate Judge on March 16, 1993, Mr. Cameron expressly represented to the Court certain facts regarding the *Nora Williams* proceedings and, based upon these purported facts, argued that the *Nora Williams* proceedings were inapposite to the instant case.

would be appropriate. *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1240, 1243 (10th Cir.1988) ("An award for attorneys' fees is authorized by the court's inherent power to award fees in cases where the litigants' conduct constitutes bad faith as well as specific federal rules and statutes which provide discretionary power to the court for such awards."); *Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–46, 36 L.Ed.2d 702 (1973) ("[I]t is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."); *see also* Fed.R.Civ.P. 37(b)(2).

▪ Further, the inherent ability of the trial court to protect the discovery process from willful abuse by litigants ensures the efficacy of our pre-trial discovery system. *E.g., Williams v. Texaco, Inc.*, 165 B.R. 662, 676 (Bankr.D.N.M.1994). In this context, it is elemental that, as an officer of the court, an attorney has a duty of good faith in dealing with the judiciary. *See, e.g.,* N.D. LR 83.4 (Oath of Attorney) ("I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the Judge or jury by any artifice or false statement of fact or law."); N.D. LR 1.4 (Professional Conduct Expected); *see generally* Okla.Stat.Ann. tit. 5, ch. 1, App. 1–A, Rule 1.5 (West Supp.1996 (adoption of Oklahoma Rules of Professional Conduct).

Rule 37(b)(2) of the Federal Rules of Civil Procedure states that:

[i]f a party ... fails to obey an order to provide ... discovery ..., the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

.　　.　　.　　.　　.

In lieu of any of the foregoing orders or in addition thereto, *the court shall require* the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(b)(2) (emphasis added).

On February 3, 1993, the Magistrate Judge filed a discovery order providing that:

Defendant is to inform Plaintiff no later than **February 26, 1993** of *all* documents which relate to the issues raised by the claim of transmission defect in this action, regardless of how the documents are compiled or how the indexes or lists are maintained or called. This means that documents which are claimed as privileged are to be identified.... Where documents are claimed to be privileged they are to be specifically identified, listing individual documents, indicating the date generated, to whom sent (if applicable), the subject of the document and a brief factual statement of the basis for the claim of privilege.

2/3/93 Order at 2 (emphasis in original). A review of the transcript from the telephone conference held by the court on February 2, 1993 further buttresses the intent of the Magistrate in the February 3 order. In the conference, the Magistrate stated:

I do not want to get to a point where counsel for plaintiff is trodding [sic] out numerous other orders of other federal courts referencing documents which Ford counsel in this case are pulling their hands out of their pockets and saying, gee, we don't have them because that is going to lead us right into a Rule 37 sanctions issue, and that is going to lead us right into a

question of whether Ford is cooperating in discovery, which may lead us right into a dispositive sanction, and that is not something that I frankly want to get into.

I would much prefer that we deal with this on a professional basis, that all documents are disclosed and that counsel work with one another trusting that in fact federal rule one, that is that discovery and that these rules are implemented for the purpose of expediting litigation be carried into effect, but I'm not going to sit here and listen to numerous other court orders addressing documents which exist when at the same time Ford is contrasting that by saying, I don't have such documents, when clearly the other courts have found that they did.

So I want to cut through all of this and get down to what is really there, and I'm not going to be—I'm not going to limit the obligation of Ford by the way I describe things in terms of if I haven't said the proper name of the document, Ford better not hide behind that argument in terms of not producing or advising what documents which are transmission related, customer complaints, correspondence, test studies, federal government reports, you name it, which are out there.

So I think I am making myself fairly clear, and the obligation of Ford's counsel will be to make a diligent, as I said in the order, a good faith effort to locate all, underlining the word all, documents which pertain to this transmission litigation, and I don't frankly care what they are called or where they are located, but if they are in Ford's purview, they are to come forward with those lists and we can then talk about what is privileged and what is not and how they can be accessed, but the intention of that order is to produce information from which we can expeditiously address document discovery in this case.

2/2/93 Transcript at 27–28. Thus, it is clear that the Magistrate ordered the production of the notebooks in the February 3 order.

Subsequent to the imposition of the February 3 order, Ford informed the court that it could not individually list all privileged documents on a log within the time constraints of the court. The Magistrate Judge held a discovery hearing on February 16, 1993 and entered an order the following day, which provides in relevant part as follows:

> Defendant, upon examination of the documents potentially responsive to the court's *Order* now says that it can comply with the court's *Order* in all respects, except that it will be unable to meet the requirement that it individually list all documents to which it claims privilege (correspondingly, providing certain other information related to the document, including a brief factual statement why privilege is appropriate for the identified document). Defendant asks that it be permitted to specify the *categories* of documents it has as opposed to individual documents, letting Plaintiff's counsel then review the categories in an effort to reduce the work required. Defendant believes that individual identification of documents may take up to 90 days.

> Upon review, the undersigned finds as follows.... Defendant is to make a good faith effort to *specifically* categorize documents to which it claims privilege *in lieu* of individually listing same. The order requiring individual listing is thus held in abeyance pending review of defendant's categorizations.

> Further decision regarding privileged documents will be made on **March 3, 1993.**

2/16/93 Order at 2 (emphasis in original).

Thus, as a result of the February 17, 1993 order, Defendant was only required to specify categories of privileged documents, rather than individually listing each document. However, despite the relief granted by the Magistrate in the February 17 order, the Court finds that, pursuant to Rule 37(b)(2), Ford failed to obey the February 3 discovery order. The February 17 order did not cure Ford's failure to comply with the February 3 order because the adjustments secured by Ford in the February 17 order were based upon Ford's misleading statement to the court that it was "unable to meet the requirement that it individually list all documents to which it claims privilege" within the requested time frame. Thus, the Court concludes that Ford violated the provi-

sions of Rule 37(b)(2). The Court may sanction Ford accordingly.[2]

Additionally, although the current version of Rule 37(c) of the Federal Rules of Civil Procedure was not in effect until several months after the March 3, 1993 hearing, the Court believes that Ford's conduct, taken as a whole, would clearly have violated this provision as well. Rule 37(c)(1) states that "the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions ... [upon] [a] party that without substantial justification fails to disclose information required by Rule 26(a)...." Rule 26(a)(5) includes written interrogatories and demands for document production. "In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include" the above-described sanctions enumerated in Rule 37(b)(2)(B). Fed.R.Civ.P. 37(c)(1).

Subsequent to the February 17 order, Plaintiff served Ford with discovery requests that included a Request for Production No. 37 that sought production of each of the categories of documents that were identified by Ford as being privileged and/or confidential.

The Magistrate Judge held another discovery hearing on March 16, 1993. At that hearing, Ford made the above-described misrepresentation to the Magistrate Judge. Many other discovery issues were also discussed at that hearing. However, it is clear from the text of the hearing that Ford managed to avoid its obligation to respond appropriately to Plaintiff's Request for Production No. 37, including the preparation of a privilege log, at least in part, by means of a misrepresentation to the court. As a result, contrary to the provisions of Rule 37(c), Ford, in effect, failed to disclose information without substantial justification, which failure continued into 1995.

## V.

As stated above, in response to certain of Ford's concerns set out in its motion to reconsider, the Court grants Ford's motion to the extent that it has reconsidered and modified the preliminary relief granted to Plaintiff as set forth herein. Ford objects to Plaintiff's counsel and expert reviewing the documents which it claims are privileged. Ford also objects to paying for Plaintiff's review of the documents.

Ford claims that its initial concerns regarding disclosure of these documents to Plaintiff are "redoubled" where they are to be disclosed to "an adversary expert" who has been "retained in hundreds of lawsuits against Ford Motor Company" and is likely to be involved in future cases against Ford. The defense argues that "it is inconceivable that Mr. Stilson could separate out and avoid using or referring to knowledge gleaned from a review of these thousands of documents from the many other thousands of Ford transmission-related documents he has reviewed elsewhere."

The Court believes that Defendant's concerns have merit.[3] The document review directed by the Court inquires into the question of prejudice to the Plaintiff. The results of that inquiry are necessary to determine whether the initial claims of privilege were well-founded and propounded in good faith or, alternatively, were calculated

**2.** The Court notes that if the provisions of Rule 37 did not cover Ford's conduct, as Defendant argues in its brief, then such conduct would clearly be subject to the provisions of Rule 11. *See* Fed.R.Civ.P. 11(d) (Inapplicability to Discovery). Accordingly, Ford's conduct would be subject to sanctions under Rule 11(c).

**3.** These concerns, however, do not extend to Plaintiff's local counsel under the circumstances presented here. First, these lawyers, who practice primarily in this jurisdiction, are bound by the ethical standards of the profession, as well as the protective order entered by the Court. The sanctions which the Court may impose upon these lawyers for violation of this Court's order are daunting. Second, the review they are performing is expressly limited by the terms of the 11/22/95 Order and this order and will be conducted under the auspices of the Court for the judicial purposes articulated herein. Finally, this case has already been tried, and if the inquiry regarding prejudice yields nothing, the option of a retrial is not available. Given the present posture of this case, the chances of unfair consequences flowing to the defense by virtue of the restricted disclosure of the documents to Plaintiff's local counsel are negligible.

to prevent the revelation of damaging, discoverable information.[4] Some mechanism for discovering whether Plaintiff was prejudiced by Defendant's conduct must be put into place before the Court is able to make its final disposition of Plaintiff's motion for sanctions.[5]

If Plaintiff has not been prejudiced by virtue of Defendant's conduct, the dissemination of materials possibly subject to a claim of privilege (although colorable only outside the established law of this case) to an expert witness who testifies widely against Ford may be problematic. Upon reflection, the Court concludes that the danger of unfair prejudice inherent in a blanket disclosure to the "adversary expert" outweighs its anticipated benefit. Consequently, the Court hereby modifies its order of November 22, 1995 to restrict dissemination of the documents in question to the attorneys and regular full-time employees of Roberts, Marrs & Carson, Plaintiff's local counsel.[6] The persons conducting the document review are subject to the protective order provisions put into place by the November 22, 1995 order.

■ Further, the Court shares Defendant's concern with expense. Although Ford will be held accountable for reasonable fees and expenses which were incurred by Plaintiff as a result of Defendant's misrepresentation to the Court, the Court recognizes its continuing responsibility to ensure that future expenditures are prudent. Consequently, Plaintiff's counsel is initially authorized to work a maximum of fifty hours reviewing the documents that Ford must produce. The maximum billable rate allowed for this document review will be $100 per hour.[7] If necessary, that rate may be reviewed by the Court in the future. If more than fifty hours of document review is necessary because of the volume, complexity, or disorganization of the documents produced, then Plaintiff's counsel may seek authorization to expend additional hours.[8]

4. Unless Plaintiff is able to demonstrate that he was prejudiced by virtue of the non-disclosure of a document and that the document would have been discoverable, the Court will not find that prejudice inured to him as a result of Ford's conduct pursuant to Rule 37. *See* 11/22/95 Order at 5.

5. In Plaintiff's Response to Court's Inquiries of December 15, 1995, Plaintiff proposes, as an alternative sanction, that the Court presume prejudice without conducting any document review and "impose a fine of not less than $5,000,000, payable to Craig Simon and his attorneys, against Ford Motor Company." However, in the Tenth Circuit, it is well settled that prejudice is a central focus of a sanctions determination. *See Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1465 (10th Cir.1988). Therefore, the Court rejects Plaintiff's alternative proposal.

6. Plaintiff's statement that "plaintiff's counsel must engage an individual with technical expertise in order to evaluate the significance of many of the documents" notwithstanding, the Court believes that Plaintiff's attorneys at Roberts, Marrs & Carson, who were instrumental in trial preparation and in conducting Plaintiff's trial, are capable of reviewing the documents for prejudice, at least initially. Further, because Plaintiffs have the two volume index to assist them in determining, in the first instance, which groups of documents may be prejudicial, the Court rejects Plaintiff's costly proposal to engage Evergreen Imaging Services to image the documents onto CD ROM discs "to enable computer-assisted review of the documents."

In the unlikely event that some of the documents contain extremely technical information, beyond the comprehension of Plaintiff's local attorneys, the Court will entertain a motion to allow limited expert review and assistance. The Court will be more inclined to grant any such request for review if the expert witness employed by Plaintiff is someone other than Mr. Stilson and such expert witness does not testify widely for plaintiffs in Ford transmission cases. Thomas Feaheny, the former technical vice-president of Ford who Plaintiff mentions in his response to the December 15 hearing, may or may not fit that description.

7. This maximum rate of $100 applies only to the prospective work involved in the document review. Plaintiff's counsel are not restricted from seeking a higher, but still reasonable, rate for past work which the Court has found to be compensable as part of the sanctions imposed upon Defendant in the November 22, 1995 order.

8. This approach is designed both to create the proper incentives and to minimize expenses. The Court believes that the maximum rate of $100 per hour is appropriate under the circumstances, in part, to avoid prolonging the review process. The willingness of the Court both to extend the length of time of the review and/or increase the maximum rate, for good reason, however, should provide an incentive to Ford to provide the documents in an organized and indexed form that facilitates an efficient review.

On December 13, 1995, the Court stayed the provisions of the November 22 order pending an expedited hearing on Ford's motion to reconsider on December 15, 1995. By virtue of this order, the December 13 stay is lifted. In the initial order, the Court had ordered Ford to produce documents no later than December 22, 1995. To allow Ford enough time to complete the document production, the Court extends Ford's deadline for production to Plaintiff to February 2, 1996. Plaintiff now will have until April 3, 1996 to make its submission to the Court that specifies the degree of actual prejudice, if any, suffered by Plaintiff. To obtain attorney's fees and other costs expended in accordance with this order, Plaintiff shall submit an accounting to the Court. In the accounting, fees and costs resulting from the sanctions motions shall be segregated from fees and costs for the document review. This accounting shall be submitted to the Court within 30 days after the completion of the document review.

## VI.

The second portion of Ford's motion requests certification of two questions to the Tenth Circuit Court of Appeals pursuant to 28 U.S.C. § 1292(b). That section provides that:

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order....

28 U.S.C. § 1292(b). Ford has requested certification of the following questions:

(1) Whether sanctions may be awarded under Rule 37 merely because a truth-

ful statement is subsequently deemed to be not "forthright."

(2) Where a party claims that documents are protected from discovery by the attorney client privilege, whether a court may order production of those documents without first ruling on the privilege claims.

Ford's Motion for Reconsideration at 4.

The Court finds that these questions do not present a "controlling question of law as to which there is substantial ground for difference of opinion". As to the first question, as emphasized above, the Court did *not* find Ford's statement to be truthful. Thus, Ford's first question is based upon a misstatement of the Court's November 22, 1995 order, and the Court declines to certify it.

The second question also misstates the substance of the November 22, 1995 order. The Court ordered Ford to produce certain documents. As to some of those documents, Ford may have properly asserted a claim that they were protected from disclosure because of certain privileges had they been produced during the discovery period in this case or had they been listed on a privilege index during the discovery period in this case. However, because Ford improperly attempted to protect these and other documents from disclosure during the discovery period in this case with the above-described statements directed to Magistrate Wolfe, the Court has sanctioned Ford by refusing to allow Defendant to assert a claim of privilege with respect to these documents for the limited purpose of determining whether Plaintiff has been prejudiced by Ford's conduct. *Cf. Williams*, 165 B.R. at 671, 675 ("the Court's sanction striking Texaco's discharge in bankruptcy defense was 'nothing more than the invocation of a legal presumption, or what is the same thing, the finding of a constructive waiver.' "); *see also* Fed.R.Civ.P. 37(b)(2)(B).

Thus, the Court has ruled on any claims of privilege which Ford might have raised with respect to this limited document review.[9]

---

**9.** The only case cited by Ford in support of its claim that the Court should not disclose the documents is *Chase Manhattan Bank, N.A. v.*

*Turner & Newall, PLC,* 964 F.2d 159 (2d Cir. 1992). However, *Chase Manhattan* is inapposite to the instant case because the facts in *Chase*

Therefore, Ford's second question also inaccurately portrays the November 22, 1995 order, and certification is hereby denied.

## VII.

In conclusion, the stay entered on December 13, 1995 is hereby lifted. Ford's Motion for Reconsideration of Court's Order of November 22, 1995, or, in the Alternative, Certification under Section 1292(b) and for a Stay Pending Appellate Review (Docket # 174) is hereby granted in part and denied in part.

IT IS SO ORDERED.

*Manhattan* present a different issue than the one faced by the Court in ruling upon Plaintiff's motion for sanctions.

*Chase Manhattan* did not involve any finding of misconduct or imposition of sanctions upon a party. Rather, the context of *Chase Manhattan* was a discovery order requiring a litigant to turn over documents subject to a claim of attorney-client privilege to opposing counsel, before a judicial ruling on the merits of the privilege claim, for "an attorneys'-eyes-only review" to narrow the group of documents over which the parties were seeking a ruling as to privilege. The court effected this procedure in lieu of requiring the production of a detailed privilege list with respect to "thousands of documents". The

Second Circuit issued a writ of mandamus, disapproving of the court's procedure compelling disclosure of the documents prior to a ruling on the merits. 964 F.2d at 164–66.

In contrast, Plaintiff here has moved for sanctions. Because of Defendant's misconduct, this Court has ruled that Defendant may not assert a claim of privilege with respect to the documents listed in the Hall & Evans notebooks for the limited purpose of the document review by Plaintiff's local counsel. This ruling is wholly consistent with the reasoning of *Chase Manhattan. See id.* at 166 ("the failure to comply with Rule 46(e)(2) [governing production of a privilege log] may result in a finding that the privilege has been waived.").