Earl E. THOMPSON, Sr., Plaintiff,

v.

Henry T. HAYNES, et al., Defendants.

No. 95–CV–1139–H(M).

United States District Court,
N.D. Oklahoma.

Jan. 5, 1999.

Frank John Catalano, Tulsa, OK, for plaintiff.

John A. Kenney, McAfee & Taft, Oklahoma City, OK, Lawrence R. Watson, Gardere & Wynne LLP, Tulsa, OK, for defendants.

## *ORDER*

McCARTHY, United States Magistrate Judge.

Defendants' request for sanctions against Plaintiff for alleged abuse of the discovery process is before the Court for consideration.

## BACKGROUND

Plaintiff opposed Defendants' motion to compel production of his patent application No. 08/320,887. [Dkt. 87, 93]. When the Court ordered Plaintiff to produce the patent application, Plaintiff produced what he represented to be a copy of the application as filed with the patent office. At Plaintiff's deposition, when Defendants questioned the completeness of the file, Plaintiff would not agree to allow Defendants access to the patent office's file.[1] And, when Defendants orally requested a Court Order releasing the patent office's file, Plaintiff's attorney objected and represented to the Court that the application file produced was complete.[2]

In response to Defendants' written motion to order production of the patent office's file, Plaintiff's attorney again represented to the Court that the application file produced was complete and again objected to any order releasing the patent office's file. [Dkt. 132]. After the Court ordered the release of the patent office's file and before it was produced, Plaintiff's attorney once again represented to the Court that the application file produced was complete.[3] Plaintiff then filed

---

1. Dkt. 130, Tab. 2, p. 275.

2. **Transcript: Teleconference before Magistrate McCarthy, September 11, 1998, page 4, line 18 – page 6, line 4.**

   [MR. CATALANO:] As far as the issue is concerned with the patent information that we gave them, the disclosure that we made and they say that there are documents missing, there are no documents missing.

   MR. THOMPSON: It's abandoned.

   MR. CATALANO: Yes, it's an abandoned patent application that Mr. Thompson prepared himself, he's given them a copy of his entire file. Before we ever got to the point of this deposition, what was represented to you in the court was, "We either need a copy of Mr. Thompson's file or we need to have permission to go to the patent office."

   And, we consented. We agreed. We have given them the file. We did that in the courtroom. We told you that we would do that. We did that. We've given them everything that have. There's been nothing withheld. The file is complete, and this is more seeking to delay.

3. **Transcript of Proceedings Had on December 1, 1998, *IN-COURT HEARING*, Before the Honorable Sven Erik Holmes, Judge, page 9, line 12 – page 11, line 25.**

   THE COURT: Let me ask you this. I'm a little bit perplexed in reviewing the papers as to why it was necessary to get a court order to direct the patent office to produce documents. An apparently that was because your client refused to sign a power of attorney for that purpose?

   MR. CATALANO: We provided the documents with respect to the abandoned application. The only reason there's a court order to the patent office now regarding that issue is because they say there's a document missing, which there isn't. I mean, I can't say anything more about that. We produced the whole file to them. They say that there's something that we didn't give them in it.

   THE COURT: So you are saying that when these papers come in—

   MR. CATALANO: Yes.

   THE COURT:—from the patent office they will be precisely what there is here.

   MR. CATALANO: Unless the patent office has things in there that they do that they don't send to us. And we've produced everything that we have. We've produced everything that we received from the patent office.

   THE COURT: The everything we have thing is not an acceptable answer. The question is—

   MR. CATALANO: How can we produce something we don't have?

   THE COURT: Well, we will get to that.

   MR. CATALANO: Okay.

   THE COURT: Is this everything there was?

   MR. CATALANO: So far as we know.

   THE COURT: So, you're saying—because I can promise you—

   MR. CATALANO: Yes.

   THE COURT:—if they produce something from the patent office that indicates that there are omitted items from that which you've produced—

   MR. CATALANO: Yes.

   THE COURT:—then it will be an Old Testament kind of life and times here.

   MR. CATALANO: Time to flog—

   THE COURT: Understand?

   MR. CATALANO: Time to flog me.

   THE COURT: Okay.

   MR. CATALANO: I appreciate—

   THE COURT: Well, I'm just saying that that would be a breach of great magnitude.

   MR. CATALANO: I appreciate that. And that's why I'm saying to you, there may be. I don't know if the patent office has—

   THE COURT: No, I'm not talking about patent office created documents.

   MR. CATALANO:—internal documents but—

   THE COURT: No, I understand that.

   MR. CATALANO: Yes.

   THE COURT: I'm talking about representations that would be made that would be probative of views about, you know anything that was expressed by your client.

   MR. CATALANO: There's only one exception to that, and that's this. That what my client did was respond by sending back that form to the patent office with a check. That's all it was.

**938**

a motion to reconsider the Order directing the patent office to produce its file. Plaintiff's motion was denied. [Dkt. 139].

Once produced, a comparison of the patent office file to the file produced by Plaintiff revealed substantial discrepancies. [Dkt. 151, Tab E, highlights the discrepancies]. In response to these facts, Plaintiff filed an affidavit, wherein he states: 1) that the discrepancies exist; 2) that he personally changed/prepared the documents produced in discovery; 3) that he did so intending to "amend" his application with the patent office but never did so; and 4) that he produced the "amended" application to Defendants as the original through " . . . inadvertence occasioned by forgetfulness and sloppy record-keeping . . . . " [Dkt. 154, Tab B].

## DISCUSSION

■ In considering an appropriate sanction in this case, the Court has given very serious consideration to all of the facts currently in the record and the factors suggested by the Court in *Ehrenhaus v. Reynolds,* 965 F.2d 916 (10th Cir.1992). Defendants have requested severe sanctions, including dismissal of Plaintiff's case with prejudice. However, the record does not establish the necessary prejudice to Defendants' case to support such a dispositive sanction. The prejudice asserted by Defendants consisting of delay and mounting attorney's fees, can be adequately addressed by lesser sanctions. Of course, the Trial Court may revisit this issue on the basis of the current record or as the facts develop at trial. The Court will, therefore, consider the non-dispositive sanction of reasonable expenses, including attorney's fees.

## AWARD OF EXPENSES INCLUDING ATTORNEY FEES

By requiring Defendants to file a Motion To Compel and by failing to obey the Court's resulting Order, Plaintiff's and Plaintiff's at-

It was there form to him, his check to the patent office. He doesn't have a copy of the check or another copy of that thing with it.

torney's conduct implicates the sanctions set forth in Fed.R.Civ.P. 37.

Rule 37(a)(4)(A) provides:

If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified, or that other circumstances make an award of expenses unjust.

■ Plaintiff's only argument against discovery was that the requested information was irrelevant. Given the breadth of discovery contemplated by Fed.R.Civ.P. 26(b)(1), Plaintiff's relevancy argument does not provide substantial justification for his position. Plaintiff's position is especially lacking in justification in light of the fact that Plaintiff's patent application No. 08/320,887 was intended to "design around" the very patent at issue in this case. The Court finds no circumstances which would make the award of expenses unjust. Therefore in accordance with Fed.R.Civ.P. 37(a)(4)(A), the Court orders Plaintiff to pay Defendants the reasonable expenses, including attorney's fees, incurred in making the motion to compel filed June 30, 1998. [Dkt. 87].

Furthermore, the Court's Order of August 4, 1998, required Plaintiff to produce to Defendants a copy of the patent application he filed with the patent office in No. 08/320,887. It is now abundantly clear that Plaintiff did not obey this Order. Instead, Plaintiff produced an "amended" application which had not been filed with the patent office while all the time representing that it had been. When questions arose about the complete-

THE COURT: All right.
MR. CATALANO: But that's it.

ness of the file, Plaintiff and his attorney resisted production of the patent office file.

The Court finds that Plaintiff's failure to obey the August 4 Order implicates Fed. R.Civ.P. 37(b)(2) which provides:

> **Sanctions by Court in Which Action is Pending.** If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> \*     \*     \*     \*     \*     \*
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The Court further finds that Plaintiff's explanation that "this inaccuracy was solely the result of inadvertence occasioned by forgetfulness and sloppy record-keeping" does not constitute substantial justification for Plaintiff's failure to obey the Court's Order. The Court also finds that there are no circumstances which make the award of expenses unjust. Therefore, pursuant to Fed.R.Civ.P. 37(b)(2), the Court orders Plaintiff to pay to Defendants the reasonable expenses, including attorney fees, caused by Plaintiff's failure to obey the Court's Order including these proceedings regarding sanctions.

## SANCTIONS AGAINST ATTORNEY CATALANO

■ An attorney has a duty of absolute candor to the Court.

> In this context, it is elemental that, as an officer of the court, an attorney has a duty of good faith in dealing with the judiciary. *See, e.g.,* N.D. LR 83.4 (Oath of Attorney) ("I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the Judge or jury by an artifice or false statement of fact or law."); N.D. LR 1.4 (Professional Conduct Expected); *see generally* Okla.Stat.Ann. tit. 5, ch. 1, App. 1–A, Rule 1.5 (West Supp.1996 (adoption of Oklahoma Rules of Professional Conduct)).

*Simon v. Ford Motor Company,* 165 F.R.D. 650 (N.D.Okl.1995). One aspect of this duty of candor is the attorney's obligation to reasonably investigate the facts before making representations to the court. *See* Fed. R.Civ.P. 26(g)(2) and Advisory Notes.[4]

4. A separate instance of Attorney Catalano's failure to meet this requirement was discussed at the hearing on December 21, 1998:

> [MR. CATALANO:] He says that I misrepresented to you, when we were in Court here that day and you asked whether there were any other applications, and here this application existed that was filed on January 5th, 1998. And here I was in April, or whatever, telling you that it didn't exist.
>
> What I told you then was the truth. That application was filed in January of 1998, I didn't know that that application had been filed. When you asked me on that day, and I said—
>
> THE COURT: Then the appropriate response, Mr. Catalano, for your further reference is—
>
> MR. CATALANO: Yes.
>
> THE COURT:—you don't know.
>
> MR. CATALANO: I did know.
>
> THE COURT: Not an affirmative response that this doesn't exist.
>
> MR. CATALANO: I'm sorry, I believed I did know. Your Honor, what you asked me was, were there any applications. And we've got— at that point in time, when they stood here, the answer, the true answer to that question was, no. That's my knowledge. I mean, I've been involved with this case for four years.
>
> THE COURT: But the true answer, Mr. Catalano is, yes, there's another application. I just don't happen to know about it.
>
> MR. CATALANO: Well, how could I say that if I didn't know about it, Your Honor?
>
> THE COURT: That's what I'm telling you. The correct response in the future, sir, is, I don't know, unless you in fact know. If you don't know if there were any other patent applications on file, your answer to the Court, I don't know, Your Honor. I'll have to check and find out.
>
> Thirty more seconds.
>
> MR. CATALANO: Your Honor, if—if—if—if that turns out to be the failing here, then I guess I need to be whipped, but please, don't whip my client for that because I've made an innocent statement to you, Your Honor, and didn't mean anything else by it and he shouldn't pay the price for it.
>
> **Transcript of Proceedings Had On December 21, 1998, Before The Honorable Frank H. McCarthy, Magistrate Judge, pp. 66–67.**

Nowhere is an attorney's representation of the facts more important than in discovery. For the discovery process to function, the Court and counsel must be able to rely on the accuracy of discovery responses. When an attorney fails to make a reasonable investigation before making representations to the Court, the attorney undermines the discovery process and appropriate sanctions should be imposed to both rectify any prejudice caused by the attorney's conduct and also to deter the attorney and others from such conduct in the future. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747, *reh'g. denied* (1976).

Both Rule 37(a)(4)(A) and (b)(2) provide for the assessment of expenses, including attorney fees, against the attorney advising the party. Attorney Catalano offered no substantial justification for his conduct. Further, Attorney Catalano's conduct relating to this discovery issue has been completely lacking in professionalism. The Court finds Attorney Catalano failed in his obligation to reasonably investigate the facts before making representations to the Court. And, as late as the hearing on December 21, 1998, Attorney Catalano appeared not to understand the seriousness of his transgression. The Court finds that there are no circumstances which would make the award of expenses unjust. The Court concludes, therefore, that it is appropriate to hold Attorney Catalano personally responsible with his client for the payment of these expenses, including attorney's fees. To deter such conduct in the future by Attorney Catalano and others, it is also appropriate to publish this Order as public notice that Attorney Catalano's conduct is unacceptable and to further serve as a readily accessible public record should such conduct be repeated.

The Court orders Attorney Catalano to personally pay, jointly and severally with Plaintiff, the reasonable expenses, including attorney fees, from and including Defendants' filing of their Motion To Compel U.S. Commissioner of Patents/Trademarks To Identify and Produce Patent Applications and Records, [Dkt. 130], including all proceedings regarding sanctions.[5]

IT IS SO ORDERED.

---

5. Plaintiff is severally liable for Defendants' reasonable expenses, including attorney's fees, from and including Defendants' Motion To Compel. [Dkt. 87]. Plaintiff and Attorney Catalano are jointly and severally liable for Defendants' reasonable expenses, including attorney's fees, from and including Defendants' Motion To Compel U.S. Commissioner of Patents/Trademarks To Identify and Produce Patent Applications and Records. [Dkt. 130]. Because Attorney Catalano "may" have been initially justified in relying upon his client's representation of the contents of the application file, Attorney Catalano is not personally responsible for the expenses and fees of Defendants' Motion To Compel [Dkt. 87]. However, once the contents of the file were questioned by Defendants, Attorney Catalano had a duty to make sure that what he had produced was what he represented it to be.